

# THE ATTORNEY GENERAL

## OF TEXAS

WAGGONER CARR
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 13, 1966

Hon. D. Roy Harrington
Chairman, Interstate Co-
operation Committee
State Senate
Austin, Texas

Opinion No. C-684

Re: If, after a Foreign
vessel or an American ves-
sel under registry has
arrived at a port of entry
a Sabine District Branch
Pilot docks or undocks the
vessel, may the Board of
Pilot Commissioners by
virtue of Vernon's Civil
Statutes, Articles 8264,
8267, 8268 and 8274 au-
thorize the Branch Pilot to
make an additional charge
for this service and re-

Dear Senator Harrington:

lated question?

Your letter requesting an opinion of this office reads
in part as follows:

1. "If, after a Foreign vessel or an American
vessel under registry has arrived at 'a
port of entry', a Sabine District Branch
Pilot docks or undocks the vessel, may the
Board of Pilot Commissioners (by virtue of
Vernon's Annotated Civil Statutes, Articles
8264, 8267, 8268 and 8274) authorize the
Branch Pilot to make an additional charge
for this service?"

2. "Has a Foreign vessel or an American vessel
under registry, which is proceeding into the
Sabine District, 'arrived at the port of
entry' when she either (1) moors at a public
anchorage within the Corps of Engineers pro-
ject for the Sabine-Neches Waterway, or (11)
crosses the boundary line of the Corps of
Engineers project for the Sabine-Neches
Waterway, for the purpose of entering a pri-
vately maintained channel or berth?"

The Congress of the United States has granted to the several States the right to regulate pilotage as set out in 46 U.S.C.A., State Regulations as to licenses of pilot, etc., Sec. 215. This part of the statute says:

"In no case shall the fees charged for pilotage of any vessel exceed the customary or legally established rates in the State where the same is performed."

The Legislature of the State of Texas has regulated the pilots, harbors and ports in Articles 8264 through 8280, Vernon's Civil Statutes. These statutes set forth the form and procedure of regulation and provide for appointing a Board for each harbor or port. This Board licenses pilots and sets the fees to be charged by the pilots in guiding ships to port. Article 8274 sets the maximum fee that may be charged by the pilot, and reads, in part as follows:

"The rate of pilotage, which may be fixed under Articles 8267 and 8269, on any class of vessels shall not, in any part of this state ... exceed six dollars ($6.00) for each foot of water which the vessel at the time of piloting draws, ..."

In the Sabine Pilot's Association v. Lykes Steamship Company, Inc., 346 S.W.2d 166 (Tex.Civ.App.1961), the Court held that the language of Article 8274 was clear and unambiguous and that the Board of the Sabine-Neches River Waterway could fix rates for bringing the ship to port as long as same were not above the statutory limits.

In Bloomfield Steamship Company v. Sabine Pilot's Association, 262 F.2d 345, (C.A. 5th Cir.1959, cert. denied, 368 U.S. 802), wherein certain steamship companies sued to recover overcharges by pilots above the maximum fixed by Article 8274, the Court said:

"We hold that the statutory maximum applies from sea to any port in the state, and that no additional pilotage charge may be legally assessed, except for moving a vessel further after she has arrived at a port of entry."

The Court did not state at what point in its journey a vessel arrived at "a port of entry". Our research has revealed that the term "a port of entry" has been used in

reference to the collection of customs and used synonymously with the term "collection districts". The only cases that we have found in reference to "a port of entry" are Cross v. Harrison, 57 U.S. 164 and De Lima v. Bidwell, 182 U.S. 1. The United States Supreme Court in the De Lima case cited the Cross case with approval. In the Cross case it was said:

> "... that collection districts and ports of entry are no more than designated localities within and at which Congress had extended the liberty of commerce in the United States, and that so much of its territory as is not within a collection district must be considered as having been withheld from that liberty. It is very well understood to be a part of the law of nations that each nation may designate, upon its own terms, the ports and places within its territory for foreign commerce, and that any attempt to introduce foreign goods elsewhere within its jurisdiction is a violation of its sovereignty."

It is beyond question that the place of docking and undocking, by necessity, is the "collection districts" and "ports of entry".

The State of Oregon created a Board of Pilot Commissioners, as an administrative agency, (Oregon Laws 1957, Ch. 448, codified as ORS Ch. 776) and empowered the Board to:

> "Provide for efficient and competent pilotage service ..."

to

> "Fix, at reasonable and just rates, pilotage fees ..." (Emphasis supplied)

The Oregon Supreme Court in the case of Powell v. State, 355 P2d 224 (1960) had before it for decision, whether the pilotage fees fixed by the Board of Pilot Commissioners also covered the services of the pilots in docking and undocking the vessels. The pilots contended that the word "pilotage" as used in the statutes authorizing the Board to fix rates therefor must receive a very strict construction and that the Board had authority only to fix rates for guiding a vessel up or down a river and nothing else. The Court stated:

"If it were possible to find some acceptable definition of the word 'pilotage' there would be no problem. As indicated, plaintiff would have us define it as limited to the act of guiding a vessel from one port on the Columbia River to another port. The shipowners and the board argue that the word is all-inclusive and includes every act performed by the pilots and those functions incidental thereto. A search for some workable definition has been interesting but rather futile. An examination of many cases, textbooks and other material involving pilots and pilotage does not disclose any attempt to define the word pilotage.

"Nothing would be added by referring to other cases and writings on the subject. From a reading of the cases, statutes and the reports we have mentioned, one thing is clear. The word pilotage is used in an all-inclusive sense. Nowhere do we find the term limited in scope to such details as docking or undocking a vessel, as the plaintiff would ask us to do.

"When we examine the entire statute we think the intent of the legislature was clear. It does not make sense that it would enact a comprehensive regulatory statute and then leave wide gaps of authority, the effect of which would render the statute meaningless. If the plaintiff were to prevail the basic power of the commission--to fix rates--would be of no avail. The pilots could circumvent any limitation on the rates fixed by the board by devices such as that proposed in this case.

"We hold that the full scope of the legislative grant of power to the board includes the power to regulate every service performed by a pilot as a pilot in accordance with his license and any acts of the pilot necessary to the ultimate performance of that service." (Emphasis supplied)

As the Powell case is directly in point, and provides an acceptable definition of the word "pilotage" we are constrained to agree with the holding therein. It is therefore our opinion that pilotage includes docking and undocking and we answer your first question in the negative, and in view

Hon. D. Roy Harrington, page 5 (C-684)


of our answer to your first question, an answer to your second question is not necessary.

### SUMMARY

The word pilotage as contained in Article 8274, V.C.S., is used in an all-inclusive sense and includes the docking and undocking of vessels and therefore the Board of Pilot Commissioners may not authorize the Branch Pilots to make an additional charge for such service.

Yours very truly,

WAGGONER CARR
Attorney General of Texas


By _Lewis Terrell_
LEWIS TERRELL
Assistant

LT:ml

APPROVED:
OPINION COMMITTEE

W.V. Geppert, Chairman
Linward Shivers
Roger Tyler
Harold Kennedy
John Banks

APPROVED FOR THE ATTORNEY GENERAL
By:  T. B. Wright